**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DOUGLAS J. BALDER, DAVID DICKSON, ATHENA CLIFFORD and BRANDON ENGLEKING, | ) ) ) | No. 19 C |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **JURY DEMAND** |
| | ) | |
| ROBERT MEEDER, in his individual and official capacity; DOMINIC CHIAPPINI, in his individual and official capacity; ILLNOIS STATE POLICE, a municipal body; THE ILLINOIS TOLLWAY, a municipal body, BRENDAN F. KELLY in his official capacity and THE STATE OF ILLINOIS, a unit of local government, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiffs Douglas J. Balder, David Dickson, Athena Clifford and Brandon Engleking  (Plaintiffs), through their attorneys, Kulwin, Masciopinto & Kulwin, L.L.P., respectfully submit the following complaint against Robert Meeder, Dominic Chiappini, the Illinois State Police, the Illinois Tollway, Brendan F. Kelly and the State of Illinois (collectively "Defendants").

**Nature of the Claim**

1.     Plaintiffs seek legal and equitable relief to redress unlawful retaliation perpetrated and tolerated by Defendants against employees who work for the Illinois State Police and the Illinois Tollway in District 15.

2.     District 15 is the premiere and most prestigious of the 22 state police districts, among other reasons, because it is high-profile, it has dual reporting responsibilities to the Illinois State Police and the Illinois Tollway and it receives a significant share of the state police budget.

3.     District 15 employs among the most sworn and civilian personnel of the 22 state police districts.  The men and women of District 15, many of whom serve at significant risk to themselves on busy Illinois tollways, are the professionals who serve the motoring public and the people of Illinois.

4.     Plaintiffs Douglas J. Balder, David Dickson and Brandon Engleking are sworn Illinois State Troopers who work for the Illinois State Police in District 15.

5.     Plaintiff Athena Clifford is a civilian employee who works for both the Illinois Tollway and Illinois State Police in District 15.

6.     Because of its significance, District 15 command-staff leadership positions are among the most highly sought-after and powerful leadership positions available within the Illinois State Police.

7.     During the relevant time period, defendants Robert Meeder and Dominic Chiappini, were the command-staff leaders, the ultimate authorities and the final decision-makers for District 15.

8.     During the relevant time period, Plaintiffs were supervised by and reported to Robert Meeder and Dominic Chiappini.

9. Since assuming command-staff leadership positions in District 15, Robert Meeder and Dominic Chiappini have retaliated against Plaintiffs, and others, who they perceive challenge or threaten their leadership position and authority.

10. During the relevant time period, Plaintiffs engaged in protected activity by speaking out and taking action on matters of public concern regarding significant problems plaguing District 15 that, among other things, Plaintiffs reasonably believed violated state laws, rules and/or regulations.

11. Plaintiffs Douglas J. Balder and Brandon Engleking engaged in protected activity, among other ways, through elected union Trustee positions with Troopers Lodge 41 representing rank-and-file troopers.

12. Plaintiff David Dickson engaged in protected activity, among other ways, by asserting legal rights on behalf of himself and other troopers.

13. Plaintiff Athena Clifford engaged in protected activity, among other ways, by reporting and opposing discrimination and harassment in the workplace.

14. Plaintiffs' protected activity challenged, threatened and was opposed by Robert Meeder and Dominic Chiappini.

15. Robert Meeder and Dominic Chiappini retaliated against Plaintiffs for engaging in protected activity.

16. For example, Defendants retaliated against plaintiffs Douglas J. Balder, David Dickson and Brandon Engleking, among other ways, by giving them arbitrary and artificially low performance ratings which will operate for years to block them from being promoted to the command-staff rank of Sergeant.

17.     Defendants retaliated against plaintiffs Douglas J. Balder and Brandon Engleking by punishing them for fulfilling their union communication responsibilities.

18.     Defendants retaliated against plaintiff Athena Clifford, among other ways, by taking away her ability to work overtime, telling co-workers she is a "thief" and "shouldn't be trusted" because she engaged in protected activity, falsely accusing her of faking an injury and lying to make people "feel bad" for her, disciplining her and giving her arbitrary and artificially low performance ratings.

19.     Defendants further retaliated against plaintiff Athena Clifford by, among other ways, closing her reports and complaints of harassment without investigation.

20.     Defendants' retaliatory conduct not only interferes with District 15's ability to fulfill its important law enforcement mission, it violates Plaintiffs' constitutional rights guaranteed under 42 U.S.C. § 1983 and Plaintiffs' civil rights guaranteed under federal and state law, including the State Officials and Employees Ethics Act, 5 ILCS 430/15.

21.     Plaintiffs' claims seek legal relief for the damage Defendants caused to them professionally and personally.  Plaintiffs' claims also seek equitable relief to prevent Defendants from retaliating against employees in the future.

**Parties, Jurisdiction and Venue**

22.     Plaintiff Douglas J. Balder (Balder) resides in the Northern District of Illinois.  Balder is employed by the Illinois State Police for District 15.

23.     Plaintiff David Dickson (Dickson) resides in the Northern District of Illinois.  Dickson is employed by the Illinois State Police for District 15.

4

24.     Plaintiff Brandon Engleking (Engleking) resides in the Northern District of Illinois.  Engleking is employed by the Illinois State Police for District 15.

25.     Plaintiff Athena Clifford (Clifford) resides in the Northern District of Illinois.  Clifford is employed by the Illinois State Police and the Illinois Tollway for District 15.

26.     Defendant Illinois State Police (ISP) is a municipal body incorporated under the laws of the State of Illinois and administers itself through the State of Illinois.

27.     Defendant Brendan F. Kelly (Kelly) is sued in his official capacity. Kelly served as the Director of the ISP during the relevant time period.

28.     Kelly has final policy making authority and/or was delegated with final policy making authority as the Director of the ISP.

29.     During the relevant time period, Kelly acted under color of law.

30.     Defendant Robert Meeder (Meeder) is sued in his individual capacity.

31.     During the relevant time period, Meeder was the ultimate authority for District 15.   From 2015 through February 2019, Meeder served as the District Commander for District 15.  In 2019, Meeder became the Northern Patrol Command Major which includes authority over District 15.

32.     Meeder has final policy making authority and/or was delegated with final policy making authority with regard to his acts and conduct alleged herein.

33.     During the relevant time period, Meeder acted under color of law.

34.     Defendant Dominic Chiappini (Chiappini) is sued in his individual capacity. From 2018 through February 2019, Chiappini served as the Executive Officer for District 15 and second in command to Meeder.  In 2019, Chiappini became Captain and District Commander for District 15.

35.     During the relevant time period, Chiappini reported directly to Meeder.

36.     Chiappini has final policy making authority and/or was delegated with final policy making authority with regard to his acts and conduct alleged herein.

37.     During the relevant time period, Chiappini acted under color of law.

38.     Defendant Illinois Tollway is a municipal agency incorporated under the laws of the State of Illinois and administers itself through the State of Illinois.

39.     The State of Illinois is sued as indemnitor and for injunctive and equitable relief for which there is no immunity.

40.     This Court has jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343 & 1367.

41.     Venue is proper in this judicial district under 28 U.S.C. §1391(b) and (c) because the events giving rise to Plaintiffs' claims occurred within this judicial district.

**Facts Common to All Claims**

42.     The ISP has statewide authority to conduct law enforcement activities and criminal investigations.

43.     ISP police officers, known as Troopers, enforce traffic laws on state highways and interstate expressways, oversee the security of the state capitol complex, protect the governor, train new officers, support local police and help to coordinate multi-jurisdictional task force activity in serious or complicated cases.  The ISP assists local police with investigations and emergencies that extend beyond the resources and jurisdictional boundaries of local agencies.

44.     ISP Troopers are supported by civilian employees and personnel who handle other aspects of ISP's law enforcement activities.

45.     The ISP is divided into 22 geographic districts.

46.     District 15 receives the largest share of the state budget in order to fulfill essential functions for the State of Illinois.

47.     District 15 is the among the largest districts in the Illinois State Police in terms of geographic area of responsibility which includes 12 counties.

48.     District 15 works directly with the Illinois Toll Highway Authority to operate one of the largest open road tolling systems in the nation.

49.     District 15 has written employment policies prohibiting retaliation for engaging in protected activity stating, among other things, that retaliation is not tolerated.

50.     In 2007, Balder became a sworn Trooper for the ISP.  Balder has worked primarily for District 15 since 2007.

51.     In 2004, Dickson became a sworn Trooper for the ISP.  Dickson has worked for District 15 since 2015.

52.     In 2009, Engleking became a sworn Trooper for the ISP and began working for District 15.

53.     In 1999, Clifford joined the Illinois Tollway.  Clifford has worked for District 15 since 2003.

54.     In 2015, Meeder became the District Commander for District 15.

55.     As District Commander, Meeder had the ultimate and sole authority to hire, fire, promote, discipline and reassign District 15 employees, including Plaintiffs.

56.     Meeder trained Chiappini and, in July 2018, Meeder selected Chiappini to serve as the Executive Officer and his second-in-command.

57.     During the relevant time period, Plaintiffs met or exceeded Defendants' legitimate employment expectations.

58.     During the relevant time period, Plaintiffs each engaged in protected activity and suffered unlawful retaliation for engaging in protected activity.

59.     The constitutional violations alleged herein were caused, in part, by the customs, policies, and practices of District 15, as promulgated, enforced, and disseminated by Defendants, whereby the institutions and individuals charged with ensuring that employees are not subject to retaliation, fostered an atmosphere where command staff was permitted and authorized to retaliate against employees for engaging in protected activity that Defendants opposed without consequence.

## COUNT I
## (Douglas J. Balder)

60.     Plaintiffs restate and re-allege by reference paragraphs 1-59 as if fully set forth herein against all Defendants.

61.     The First and Fourteenth Amendments of the United States Constitution protect public employees' political union activity and communications from retaliation.

62.     During the relevant time period, Balder served as an elected Trustee with Troopers Lodge 41.   Troopers Lodge 41 is the second largest lodge in Illinois representing approximately 3,150 sworn and retired troopers.   Troopers Lodge 41 is the voice of those who have dedicated their lives to protecting and serving the citizens of Illinois.   Troopers Lodge 41 is dedicated to improving the working conditions of the men and women of the ISP through legislation and employee representation.

63.     During the relevant tie period, Balder engaged in protected union activity that touched upon public concerns under the First Amendment that Defendants opposed.

64.     For example, in November 2018, Balder emailed union members to speak out about union political issues about District 15 that, among other things, were highly critical of District 15 leadership.   The email raised important concerns about, among other things, violations of the State Police-Tollway Operating Agreement.

65.     Within hours of sending the email, Meeder retaliated against Balder by terminating him from his Staff Officer position and striping him of his title but requiring him to do the same work.   Meeder told Balder directly he was taking these employment actions because of the email Balder sent.

66. On two separate occasions, Balder was told that he is no longer the Staff Officer and that he was not entitled to "certain rights that come with the position."

67. Robert Meeder and Dominic Chiappini approved a Complaint Against Department Member File for Balder for fulfilling union communication responsibilities.

68. In April 2019, Meeder had the responsibility to preside over a ratings session for troopers attended by numerous command staff officers in which Meeder's legitimate role was to facilitate discussions about rating the troopers.

69. Upon information and belief, based on sources from within the meeting, during the April 2019 ratings session, Meeder called Balder a "cancer" on the District for no legitimate reason damaging Balder's reputation and ability to achieve the necessary ratings scores to be eligible for promotion to Sergeant.

70. On June 17, 2019, Chiappini informed Balder in writing he is "not to correspond with the Region, Merit Board, or anyone outside of D15, except through Nick or Malissa" which shows he is still doing Staff Officer work without the title, but cut off from effectively fulfilling his job responsibilities. Chiappini told Balder the next day, "keep doing what you are doing, just stay away from Meeder."

71. Defendants intentionally retaliated against Balder for engaging in protected activity, among other ways, by: (a) assigning him arbitrary and artificially low performance ratings which will operate for years to block his ability to be promoted to the command-staff rank of Sergeant, despite the fact that he is among the most qualified individuals eligible for promotion; (b) "firing" him from his Staff Officer position that he has held since approximately February 1, 2015; (c) imposing unwarranted discipline on

him; (d) giving him an untimed suspension of his duties as a Peer Support Advisor; and (e) telling him he was in a "time out" with diminished work responsibilities.

72. The actions of each and all Defendants reflect an official act, policy, custom, or pattern of official conduct of engaging in and condoning retaliation.

73. During the relevant time period, Meeder was a final policymaker for the ISP and had final policy making authority.

74. During the relevant time period, Meeder delegated to Chiappini final policymaking authority as it relates to the conduct alleged herein.

75. Defendants are responsible for the acts of their staff, who were acting within the scope of their employment, and pursuant to a policy, custom, and/or practice of retaliation and violations of individuals' rights under the Fourteenth Amendment to the Constitution of the United States.

76. Defendants' conduct was pursuant to a policy and practice of retaliation by its employees and supervisors and with the knowledge and acquiescence of Defendants, Defendants' staff, and Defendants' supervisory officials.

77. Each and all Defendants knew and should have known that Balder was being subjected to retaliation for engaging in protected activity.

78. Despite this, Defendants failed to take any effective remedial action, and turned a blind eye to the retaliation.

79. Each and all Defendants' action violated Balder's right to be free from retaliation under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

80. Each and all Defendants subjected Balder to unlawful retaliatory acts in violation of his rights under the United States Constitution.

81. The actions of each and all Defendants were intentional, willful, and malicious and/or in reckless disregard of Plaintiff's rights as secured by 42 U.S.C. § 1983 and the Civil Rights Act of 1991.

82. The actions of each and all Defendants in intentionally engaging in and condoning the discrimination and retaliation against Balder caused Balder great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other damages.

WHEREFORE, Plaintiff Douglas J. Balder seeks the following relief:

A. All wages and benefits Balder would have received but for the discrimination and retaliation including, but not limited to, back pay, front pay, future pecuniary losses, and pre-judgment interest;

B. Compensatory damages in an amount to be determined at trial;

C. A permanent injunction enjoining Defendants from engaging in the retaliatory practices complained of herein;

D. A permanent injunction requiring that Defendants adopt employment practices and policies in accord and conformity with the requirements of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and further requiring that Defendants adopt and initiate effective remedial actions to ensure employees are not subject to retaliation for engaging in protected activity;

E. The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F. Punitive damages as allowed by law as against the individual defendants;

G. An award of reasonable attorneys' fees, costs, and litigation expenses; and

H.     Such other relief as the Court may deem just or equitable.

**COUNT II**
**(David Dickson)**

83.     Plaintiffs restate and re-alleges by reference paragraphs 1-82 as if fully set forth herein against all Defendants.

84.     The First and Fourteenth Amendments of the United States Constitution protect public employees' speech on matters of public concern from retaliation.

85.     ISP policy is to provide a fair and equitable merit process for the promotion of Illinois State Police officers.

86.     During the relevant time period, Meeder told Dickson that he was blocked from being promoted to Sergeant by an alleged "five-year unwritten rule" that allegedly precludes troopers with discipline incidents in their past from being promoted.

87.     Dickson communicated with other troopers who Meeder told the alleged "five-year unwritten rule" blocked their consideration for promotion.

88.     ISP has no "five-year unwritten rule" that impacts the ability for troopers to be promoted.  Defendants' use of an "unwritten rule" to select candidates for promotion violates ISP policy and state law.

89.     During the relevant time-period, Dickson engaged in protected activity.

90.     For example, on or about June 1, 2019, Dickson engaged in protected activity by stating his intent to litigate Meeder's use of the alleged but illegitimate "unwritten rule" to block promotions of Dickson and other troopers who were arbitrarily subjected to Meeder's alleged "unwritten rule."

13

91.     Defendants intentionally retaliated against Dickson for engaging in protected activity, among other ways, by assigning him arbitrary and artificially low performance ratings which will operate for years to block his ability to be promoted to the command-staff rank of Sergeant, despite the fact that he is among the most qualified individuals eligible for promotion.

92.     The actions of each and all Defendants reflect an official act, policy, custom, or pattern of official conduct of engaging in and condoning retaliation for engaging in protected activity.

93.     Defendants' conduct was pursuant to a policy and practice of retaliation for engaging in protected activity by employees and supervisors with the knowledge and acquiescence of Defendants, Defendants' staff, and Defendants' supervisory officials.

94.     Each and all Defendants knew and should have known that Dickson was being subjected to retaliation for engaging in protected activity.

95.     Despite this, Defendants failed to take any effective remedial action, and turned a blind eye to the retaliation.

96.     Each and all Defendants' action violated Dickson's right to be free from retaliation for engaging in protected activity under the First and Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

97.     Each and all Defendants subjected Plaintiff to an unlawful and retaliatory workplace in violation of his First and Fourteenth Amendment rights under the United States Constitution.

98.     The actions of each and all Defendants were intentional, willful, and malicious and/or in reckless disregard of Plaintiff's rights as secured by 42 U.S.C. § 1983 and the Civil Rights Act of 1991.

99.     The actions of each and all Defendants in intentionally engaging in and condoning retaliation against Dickson caused Dickson great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

WHEREFORE, plaintiff David Dickson seeks the following relief:

A.      All wages and benefits Dickson would have received but for the discrimination and retaliation including, but not limited to, back pay, front pay, future pecuniary losses, and pre-judgment interest;

B.      Compensatory damages in an amount to be determined at trial;

C.      A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;

D.      A permanent injunction requiring that Defendants adopt employment practices and policies in accord and conformity with the requirements of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and further requiring that Defendants adopt and initiate effective remedial actions to ensure employees are not subject to retaliation for engaging in protected activity;

E.      The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F.      Punitive damages as allowed by law as against the individual Defendants;

G.      An award of reasonable attorneys' fees, costs, and litigation expenses; and

H.      Such other relief as the Court may deem just or equitable.

## COUNT III
### (Brandon Engleking)

100.    Plaintiffs restate and re-alleges by reference paragraphs 1-99 as if fully set forth herein against all Defendants.

101.    The First and Fourteenth Amendments of the United States Constitution protect public employees' political union activity and communications from retaliation.

102.    During the relevant time period, as an elected Trustee with Troopers Lodge 41, Engleking engaged in protected union activity that touched upon public concerns under the First Amendment that Defendants opposed.

103.    During the first seven years of his career as an Illinois State Police Trooper, Engleking received no negative counseling forms.

104.    In 2016, Engleking became a union representative for Troopers Lodge 41. After becoming a union representative, Engleking's career took a negative turn.

105.    For example, since becoming a union representative, contrary to ISP protocol and practice, Engleking received numerous unwarranted negative counselling memorandum, including in October 2016, November 2017 and December 2017.

106.    On April 4, 2018, Engleking received another unwarranted negative counseling based on false premises. Engleking was never contacted by anyone for his side of the occurrence for which he was being disciplined.

107.    In November 2018, Engleking signed the email to union members to communicate about union political positions that, among other things, were highly critical of District 15 leadership.

16

108.    Defendants retaliated against Engleking in other ways.

109.    For example, Robert Meeder and Dominic Chiappini approved a negative performance memorandum for Engleking for fulfilling his union communication responsibilities.

110.    For example, in April 2018, Engleking filed a grievance over how District 15 was filling overtime for troopers.

111.    Within hours of filing the grievance, Meeder retaliated by departing from District 15 practices and calling out Engleking over the radio (which the entire south console could hear) advising him to respond to serious PI incident in the capacity of Crash Reconstruction Officer (CRO). At the time, Engleking was a fully certified CRO but he was on a hiatus from those duties.

112.    Meeder could have communicated with Engleking in other ways, such as calling his cellphone, sending him a message on the computer, or any other communication deemed appropriate, but not over the radio. The sole reason to use the radio to retaliate for filing the grievance, to send the public message that, if you speak up, Meeder has eyes on you and to professionally embarrass Engleking before his colleagues.

113.    Defendants retaliated against Engleking by withholding positive counseling for good performance.

114.    ISP standard protocol and practice is to provide troopers with positive counselling forms for going above and beyond the call of duty while on duty.

115.    On June 20, 2018, the Director of the ISP received a letter complimenting Engleking's impressive professional demeanor on a traffic stop. Contrary to standard ISP protocol and practice, Engleking received no positive counseling.

116.    On May 24, 2019, Engleking was forwarded an email documenting a crash he handled on May 14, 2019 where an involved party who was at fault and received a citation stated how impressed he was at how Engleking handled the situation and was appreciative of the "stellar service" he provided. Again, no positive counseling.

117.    Defendants intentionally retaliated against Engleking for engaging in protected activity by, among other ways, (a) giving him unwarranted discipline; (b) withholding positive counselling; (c) assigning him arbitrary and artificially low performance ratings to block for years his ability to be promoted to the command-staff rank of Sergeant; and (d) publicly humiliating him after he filed his grievance.

118.    The actions of each and all Defendants reflect an official act, policy, custom, or pattern of official conduct of engaging in and condoning retaliation for engaging in protected activity.

119.    Defendants' conduct was pursuant to a policy and practice of retaliation for engaging in protected activity by employees and supervisors with the knowledge and acquiescence of Defendants, Defendants' staff, and Defendants' supervisory officials.

120.    Each and all Defendants knew and should have known that Engleking was being subjected to retaliation for engaging in protected activity.

121.    Despite this, Defendants failed to take any effective remedial action, and turned a blind eye to the retaliation.

122. Each and all Defendants' action violated Engleking's right to be free from retaliation for engaging in protected activity under the First and Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

123. Each and all Defendants subjected Plaintiff to an unlawful and retaliatory workplace in violation of his First and Fourteenth Amendment rights under the United States Constitution.

124. The actions of each and all Defendants were intentional, willful, and malicious and/or in reckless disregard of Engleking's rights as secured by 42 U.S.C. § 1983 and the Civil Rights Act of 1991.

125. The actions of each and all Defendants in intentionally engaging in and condoning retaliation against Engleking caused Engleking great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

WHEREFORE, plaintiff Brandon Engleking seeks the following relief:

A. All wages and benefits Engleking would have received but for the discrimination and retaliation including, but not limited to, back pay, front pay, future pecuniary losses, and pre-judgment interest;

B. Compensatory damages in an amount to be determined at trial;

C. A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;

D. A permanent injunction requiring that Defendants adopt employment practices and policies in accord and conformity with the requirements of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and further requiring that Defendants adopt and initiate effective remedial actions to ensure employees are not subject to retaliation for engaging in protected activity;

E.     The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F.     Punitive damages as allowed by law as against the individual Defendants;

G.     An award of reasonable attorneys' fees, costs, and litigation expenses; and

H.     Such other relief as the Court may deem just or equitable.

## COUNT IV
### (Athena Clifford)

126.     Plaintiffs restate and re-allege by reference paragraphs 1-125 as if fully set forth herein against all Defendants.

127.     Clifford is one of the most senior employees within the District 15 office staff and, prior to the events involved in this case, she received favorable employee ratings throughout her career.

128.     During the relevant time period, Clifford engaged in protected activity rights that Defendants opposed.

129.     In 2018 and 2019, Clifford opposed and reported what she reasonably believed to be unlawful discrimination and harassment in the workplace.  Clifford made her reports to, among others, the Illinois Tollway EEO office, Illinois Tollway administration, District 15 command, labor relations, and the AFSCME union.

130.     Upon information and belief, Meeder made the reports "disappear" and no action was taken on them.

131.     In 2018, Meeder hired Troy Booher (Booher) to fill a position supervising Clifford.  The position had been left vacant for years.

132.   Upon information and belief, Meeder informed Booher that Clifford was a troublemaker, not to be trusted and a person unworthy of employment.

133.   In 2018, under the supervision of Boooher, Clifford received the worst performance ratings of her 20 Year career.

134.   In June 2019, having reached the 20-year milestone in her career, which is traditionally recognized by the District Commander at the annual District 15 "20 Year" party, Clifford was not included in the event to be recognized.

135.   Defendants retaliated against Clifford for engaging in protected activity, among other ways, by: (a) taking away her ability to work overtime, (b) telling co-workers that she is a "thief" and "shouldn't be trusted" because she engaged in protected activity; (c) verbally harassing her for pretextual reasons including falsely accusing her of faking her work injury and lying to make people "feel bad for her"; (d) providing her with arbitrary and artificially low performance ratings; (e) refusing to recognize her service working for District 15; and (f) making her reports and complaints of harassment disappear without investigation by the Illinois State Police or the Illinois Tollway.

136.   The actions of each and all Defendants reflect an official act, policy, custom, or pattern of official conduct of engaging in and condoning retaliation for engaging in protected activity.

137.   Defendants' conduct was pursuant to a policy and practice of retaliation for engaging in protected activity by employees and supervisors with the knowledge and acquiescence of Defendants, Defendants' staff, and Defendants' supervisory officials.

138.    Each and all Defendants knew and should have known that Clifford was being subjected to retaliation for engaging in protected activity.

139.    Despite this, Defendants failed to take any effective remedial action, and turned a blind eye to the retaliation.

140.    Each and all Defendants' action violated Clifford's right to be free from retaliation for engaging in protected activity.

141.    Each and all Defendants subjected Plaintiff to an unlawful and retaliatory workplace.

142.    The actions of each and all Defendants were intentional, willful, and malicious and/or in reckless disregard of Plaintiff's rights.

143.    The actions of each and all Defendants in intentionally engaging in and condoning retaliation against Clifford caused Clifford great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

WHEREFORE, plaintiff Athena Clifford seeks the following relief:

A.      All wages and benefits Clifford would have received but for the discrimination and retaliation including, but not limited to, back pay, front pay, future pecuniary losses, and pre-judgment interest;

B.      Compensatory damages in an amount to be determined at trial;

C.      A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;

D.     A permanent injunction requiring that Defendants adopt employment practices and policies in accord and conformity with the requirements of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and further requiring that Defendants adopt and initiate effective remedial actions to ensure employees are not subject to retaliation for engaging in protected activity;

E.     The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F.     Punitive damages as allowed by law as against the individual Defendants;

G.     An award of reasonable attorneys' fees, costs, and litigation expenses; and

H.     Such other relief as the Court may deem just or equitable.

## COUNT V
## (FMLA Retaliation - Athena Clifford)

1-143. Plaintiffs restate and re-allege by reference paragraphs 1-143 as if fully set forth herein against all Defendants.

144.   Under Section 105 of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq*., it is illegal for an employer to retaliate against employees for exercising FMLA rights.

145.   During the relevant time period, Clifford engaged in protected activity rights that Defendants opposed by taking FMLA leave.

146.   Defendants retaliated against Clifford for engaging in protected activity, as alleged herein.

147.   The actions of each and all Defendants reflect an official act, policy, custom, or pattern of official conduct of engaging in and condoning retaliation for engaging in protected activity.

148.    Defendants' conduct was pursuant to a policy and practice of retaliation for engaging in protected activity by employees and supervisors with the knowledge and acquiescence of Defendants, Defendants' staff, and Defendants' supervisory officials.

149.    Each and all Defendants knew and should have known that Clifford was being subjected to retaliation for engaging in protected activity.

150.    Despite this, Defendants failed to take any effective remedial action, and turned a blind eye to the retaliation.

151.    Each and all Defendants' action violated Clifford's right to be free from retaliation for engaging in protected activity.

152.    Each and all Defendants subjected Plaintiff to an unlawful and retaliatory workplace.

153.    The actions of each and all Defendants were intentional, willful, and malicious and/or in reckless disregard of Plaintiff's rights.

154.    The actions of each and all Defendants in intentionally engaging in and condoning retaliation against Clifford caused Clifford great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

WHEREFORE, plaintiff Athena Clifford seeks the following relief:

A.    All wages and benefits Clifford would have received but for the discrimination and retaliation including, but not limited to, back pay, front pay, future pecuniary losses, and pre-judgment interest;

B.    Compensatory damages in an amount to be determined at trial;

C.      A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;

D.      A permanent injunction requiring that Defendants adopt employment practices and policies in accord and conformity with the requirements of the FMLA and further requiring that Defendants adopt and initiate effective remedial actions to ensure employees are not subject to retaliation for engaging in protected activity;

E.      The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F.      Punitive damages as allowed by law as against the individual Defendants;

G.      An award of reasonable attorneys' fees, costs, and litigation expenses; and

H.      Such other relief as the Court may deem just or equitable.

## COUNT VI
## (Violation of State Officials and Employees Ethics Act)

155.   Plaintiff restates and re-alleges by reference paragraphs 1-154 above as though fully set forth herein.

156.   The State Officials and Employees Ethics Act, 5 ILCS 430/15 ("the Act") states in relevant part:

Protected activity. An officer, a member, a State employee, or a State agency shall not take any retaliatory action against a State employee because the State employee does any of the following:

(1) Discloses or threatens to disclose to a supervisor or to a public body an activity, policy, or practice of any officer, member, State agency, or other State employee that the State employee reasonably believes is in violation of a law, rule, or regulation.

(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of a law, rule, or regulation by any officer, member, State agency, or other State employee.

157.   Plaintiffs engaged in protected activity as alleged herein.

158.   Defendants, collectively and individually, violated the Act by retaliating against Plaintiffs as alleged herein.

159.   Defendants failed to take effective remedial action to ensure that Meeder and/or Chiapinni did not discriminate or retaliate against Plaintiffs.

160.   Plaintiffs' protected activity described above was a contributing factor in Defendants' retaliation against Plaintiffs.

161.   Defendants cannot prove by clear and convincing evidence that they would have taken the same retaliatory actions against Plaintiffs had it not been for their protected activity.

162.   As a result of Defendants' unlawful actions, Plaintiffs have suffered substantial losses, including, but not limited to, lost wages and benefits, consequential damages as a result of lost income, damage to career prospects and reputation, and emotional distress, embarrassment and humiliation.

WHEREFORE, Plaintiffs Douglas J. Balder, David Dickson, Brandon Engleking and Athena Clifford seek the following relief:

A.   All remedies necessary to make Plaintiffs whole as provided for in the Act;

B.   All wages and benefits Plaintiffs would have received but for the retaliation, including prejudgment interest;

C.   Compensatory damages in an amount to be determined at trial;

D.   Two times the amount of back pay as provided for under the Act;

E.   A permanent injunction enjoining the Defendants from engaging in the retaliatory practices complained of herein;

F.    A permanent injunction requiring Defendants to adopt employment practices and policies in accord and conformity with the requirements of the Act;

G.    The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

H.    Punitive damages as allowed by law against defendants Meeder and Chiappini;

I.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

J.    Such other relief as the Court may deem just or equitable.

## COUNT VII
### (Section 1983 Violation of Substantive Due Process Rights)

1-162. Plaintiffs restate and re-allege by reference paragraphs 1-162 as if fully set forth herein against all Defendants.

163.    The Fourteenth Amendment due process clause prohibits state governments from depriving "any person of life, liberty, or property without due process of law...."

164.    To the extent Defendants' conduct does not violate Plaintiffs' First Amendment rights, Defendants' conduct as alleged herein directly and substantially interfered with Plaintiffs' fundamental rights.

165.    Plaintiffs have fundamental rights to equal protection under the law and to not be subjected to unlawful retaliation at work.

166.    Plaintiffs' fundamental right to equal protection under the law and to not be subjected unlawful retaliation at work constitutes a fundamental liberty interest protected from undue government intrusion by the due process clause.

167.   Plaintiff's fundamental right to not be subjected to retaliation constitutes a fundamental liberty interest protected from undue government intrusion by the due process clause.

168.   Defendants directly and substantially interfered with Plaintiffs' fundamental rights by retaliating against them as alleged herein.

169.   Defendants' conduct was arbitrary and shocking to the conscience.

170.   The actions of each and all Defendants reflect an official act, policy, custom, or pattern of official conduct of engaging in and condoning violations of Plaintiffs' substantive due process rights.

171.   Defendants' conduct was pursuant to a policy and practice of violating Plaintiff's substantive due process rights by its employees and supervisors and with the knowledge and acquiescence of Defendants, Defendants' staff, and Defendants' supervisory officials.

172.   Each and all Defendants knew and should have known that Plaintiffs were being subjected to violations of their substantive due process rights.

173.   Despite this, Defendants failed to take any effective remedial action, and turned a blind eye to those violations.

174.   Each and all Defendants' action violated Plaintiffs' substantive rights under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

175.   Each and all Defendants subjected Plaintiff to violations of their substantive due process rights in violation of the United States Constitution.

176. The actions of each and all Defendants were intentional, willful, and malicious and/or in reckless disregard of Plaintiffs' rights as secured by 42 U.S.C. § 1983 and the Civil Rights Act of 1991.

177. The actions of each and all Defendants in intentionally violating Plaintiffs' substantive due process rights caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

WHEREFORE, Plaintiffs Douglas J. Balder, David Dickson, Brandon Engleking and Athena Clifford seek the following relief:

A. All wages and benefits Plaintiffs would have received but for the retaliation including, but not limited to, back pay, front pay, future pecuniary losses, and pre-judgment interest;

B. Compensatory damages in an amount to be determined at trial;

C. A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;

D. A permanent injunction requiring that Defendants adopt employment practices and policies in accord and conformity with the requirements of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and further requiring that Defendants adopt and initiate effective remedial actions to ensure equal treatment of employees and subordinates;

E. The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F. Punitive damages as allowed by law as against the individual Defendants;

G. An award of reasonable attorneys' fees, costs, and litigation expenses; and

H. Such other relief as the Court may deem just or equitable.

**PLAINTIFFS DEMAND A TRIAL BY JURY**

Respectfully submitted,

KULWIN, MASCIOPINTO & KULWIN, LLP.

By: /s/ Jeffrey R. Kulwin

Jeffrey R. Kulwin
KULWIN, MASCIOPINTO & KULWIN, L.L.P.
161 North Clark Street
Suite 2500
Chicago, Illinois 60601
312-641-0300