IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DOUGLAS J. BALDER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 19-cv-7928 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| ROBERT MEEDER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Illinois State Police employees Douglas Balder, David Dickson, Athena Clifford, and Brandon Engleking ("Plaintiffs") brought this retaliation suit against Robert Meeder and Dominic Chiappini, in their individual and official capacities; Brendan Kelly, in his official capacity; the Illinois State Police ("ISP"); the Illinois Tollway; and the State of Illinois ("Defendants"). Several motions are pending before the Court: a partial motion to dismiss [34] brought by the individual Defendants and Defendant ISP; a partial motion to dismiss brought by Defendant Illinois Tollway [39]; a motion to sever [36]; a motion to stay [37]; a motion for an extension of time to answer [38] brought by the individual Plaintiffs; and a motion to join the motion to sever [40] brought by Defendant Illinois Tollway. For the reasons below, the Court denies without prejudice the motion to sever [36], grants the motion to join [40], denies as moot the motion to stay [37], grants the motion for an extension for Defendants to answer [38], and grants in part and denies in part Defendants' motions to dismiss [34; 39]. Specifically, the Court dismisses without prejudice (1) Plaintiffs' First Amendment § 1983 claims against Defendant ISP, the individual defendants in their official capacities, Defendant Illinois Tollway, and the State of Illinois; (2) Plaintiffs' Fourteenth Amendment claims against all Defendants; and (3) Plaintiffs' Illinois Ethics Act complaint against Defendant ISP, the individual Defendants in their official capacities, and the

State of Illinois. Plaintiffs' remaining claims are (1) their First Amendment § 1983 claims against the individual Defendants in their individual capacities, (2) their Illinois Ethics Act claims against the individual Defendants in their individual capacities and Defendant Illinois Tollway, and (3) Plaintiff Clifford's FMLA claim. Plaintiffs are given until April 26, 2021 to file an amended complaint if they wish to do so. If Plaintiffs wish to stand on the claims that remain from their original complaint, they should so advise Defendants and the Courtroom Deputy. Defendants' responsive pleading will be due 28 days after Plaintiffs either (a) file an amended complaint or (b) give notice of their election to stand on the current complaint. A joint status report that includes a proposed discovery plan is due within 7 days of the filing of Defendants' responsive pleading.

I.  **Background**[1]

Plaintiffs Balder, Dickson, and Engleking are sworn Illinois State Troopers who work for Defendant ISP in District 15. [1, at ¶ 4]. Plaintiff Clifford is a civilian employee who works for both Defendant Illinois Tollway and Defendant ISP in District 15. [*Id.*, at ¶ 5]. At all relevant times, Defendants Meeder and Chiappini were the command-staff leaders at District 15, and Defendant Kelly was the Director of the ISP. [*Id.*, at ¶¶ 7, 27].

Plaintiff Balder served as an elected Trustee with Troopers Lodge 41. [*Id.*, at ¶ 62]. In November 2018, Plaintiff Balder emailed union members to speak out about union political issues that were highly critical of District 15 leadership and raised concerns about violations of the State Police-Tollway Operating Agreement. [*Id.*, at ¶ 64]. According to the complaint, within hours of sending the email, Defendant Meeder terminated Plaintiff from his Staff Officer position, stripping him of the title and rights that came with the position, but requiring him to do the same work. [*Id.*, at ¶¶ 65–66]. Defendants Meeder and Chiappini approved a complaint against Plaintiff Balder for

---

[1] The Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

fulfilling his union communication responsibilities. [*Id.*, at ¶ 67]. Defendants also assigned him artificially low performance ratings, which block his ability to be promoted; imposed unwarranted discipline on him; and gave him untimed suspension of his duties as a Peer Support Advisory. [*Id.*, at ¶ 71].

In 2016, Plaintiff Engleking became a union representative for Troopers Lodge 41. [*Id.*, at ¶ 104]. He signed onto the November 2018 email sent by Plaintiff Balder. [*Id.*, at ¶ 107]. He also filed a grievance over how District 15 filled overtime for troopers. [*Id.*, at ¶ 110]. The complaint alleges that within hours of filing the grievance, Defendant Meeder called him over the radio and advised him to respond to a serious "PI incident" in the capacity of Crash Reconstruction Officer, even though Plaintiff Engleking was on hiatus from those duties. [*Id.*, at ¶ 111]. Calling him on the radio "professionally embarrassed[ed] Engleking before his colleagues." [*Id.*, at ¶ 112]. Among other actions, Defendants withheld positive counseling for good performance, gave him unwarranted discipline, and assigned him artificially low performance ratings, which block his ability to be promoted. [*Id.*, at ¶ 117].

Defendant Meeder told Plaintiff Dickson that he was blocked from a promotion to sergeant by a "five-year unwritten rule" that precludes troopers with discipline incidents in their past from being promoted. [*Id.*, at ¶ 86]. Plaintiffs allege that this unwritten rule violates ISP policy and state law. [*Id.*, at ¶ 88]. Plaintiff Dickson communicated with other troopers who were told by Defendant Meeder that this rule blocked their promotions. [*Id.*, at ¶ 87]. In June 2019, Plaintiff Dickson "state[d] his intent to litigate Meeder's use of the alleged but illegitimate 'unwritten rule' to block promotions of Dickson and other troopers who were arbitrarily subjected to Meeder's alleged 'unwritten rule.'" [*Id.*, at ¶ 90]. Afterwards, Defendants assigned him artificially low performance ratings. [*Id.*, at ¶ 91].

In 2018 and 2019, Plaintiff Clifford "opposed and reported what she reasonably believed to be unlawful discrimination and harassment in the workplace." [*Id.*, at ¶ 129]. "Meeder made the reports 'disappear' and no action was taken on them." [*Id.*, at ¶ 130]. Plaintiff Clifford also "engaged in protected activity rights that Defendants opposed by taking FMLA leave." [*Id.*, at ¶ 145]. For years, the position supervising Plaintiff Clifford had been left vacant. [*Id.*, at ¶ 131]. In 2018, Defendant Meeder hired Troy Booher to fill the position and informed Booher that Plaintiff Clifford "was a troublemaker, not to be trusted and a person unworthy of employment." [*Id.*, at ¶ 132]. That year, Plaintiff Clifford received the worst performance rating of her 20-year career. [*Id.*, at ¶ 133]. Additionally, Defendants took away her ability to work overtime, told her coworkers that she was a thief and shouldn't be trusted, verbally harassed her, accused her of faking her work injury, provided her with artificially low performance ratings, and refused to recognize her service. [*Id.*, at ¶ 135].

Plaintiffs then brought this suit, alleging that Defendants violated (1) their First and Fourteenth Amendment rights by retaliating against them for engaging in protected activity and (2) the State Official and Employees Ethics Act, 5 Ill. Comp. Stat. 430/15.[2] Plaintiff Clifford alleges that Defendants violated the Family and Medical Leave Act ("FMLA") by retaliating against her for exercising her FMLA rights. For all claims, Plaintiffs seek both monetary and injunctive relief. Plaintiffs do not specify whether they bring each claim against all Defendants in all of their capacities. For the purposes of this opinion, the Court assumes that they do. Defendants move to sever Plaintiff Clifford's claims [36] and to partially dismiss the complaint [35; 39].

---

[2] Although the complaint mentions the Civil Rights Act of 1991, Plaintiffs clarified in their response that they do not bring Title VII claims. [40, at 6].

## II. Legal Standard

Federal Rule of Civil Procedure 20(a)(2) permits defendants to be joined in a single action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Beyond these two requirements, consideration is given as to whether joinder would result in prejudice against any parties or otherwise cause delay. *First Time Videos, LLC v. Does 1–500*, 276 F.R.D. 241, 252, (N.D. Ill. 2011). If parties have been improperly joined as defendants, the court may sever the claims pursuant to Rule 21. Rule 21 provides, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." "Federal policy favors joinder, for the purpose of Rule 20 is 'to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.'" *Nelson v. Chertoff*, 2008 WL 4211577, at *5 (N.D. Ill. Sept. 10, 2008) (quoting *Bailey v. N. Tr. Co.*, 196 F.R.D. 513, 515 (N.D. Ill. 2000)). "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). District courts have "broad discretion whether to sever a claim under Rule 21." *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir.2000).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint typically must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley*

5

*v. Gibson*, 355 U.S. 41, 47 (1957)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S at 555). That said, "federal courts require notice pleading, not fact pleading complete with all the minutiae. A complaint need only provide notice of a plausible claim; there is no rule requiring parties to plead legal theories or elements of a case." *Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 675 (7th Cir. 2019). "It is enough to plead a plausible claim, after which 'a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint."'" *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) (quoting *Twombly*, 550 U.S at 563). In determining whether the complaint meets this standard, the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth*, 507 F.3d at 618.

**III.    Analysis**

    **A.    Motion to Sever**

Defendants argue that the court should sever Plaintiff Clifford's claims as improperly joined because they arise from different time periods, positions, employers, and employment actions. [36]. In determining whether claims arise from the same series of transactions or occurrences, courts consider "the time period during which the alleged acts occurred, whether the acts of discrimination are related, whether there were differing types of adverse employment actions, whether more than one type of discrimination is alleged, whether the same supervisors were involved, whether employees worked in the same department, whether employees were at different geographical locations, and whether a company-wide policy is alleged." *Berry v. Illinois Dep't of Hum. Servs.*, 2001 WL 111035, at *17 (N.D. Ill. Feb. 2, 2001). Here, retaliation against

all Plaintiffs occurred in 2018 and 2019, which is a similar time period. See *Nelson*, 2008 WL 4211577, at *6 (finding that allegations of acts occurring primarily between 2002 and 2006 occurred in a "quite similar" time period). Although Plaintiff Clifford also alleges FMLA retaliation, all Plaintiffs allege retaliation in violation of their First and Fourteenth Amendment rights. Plaintiffs allege a variety of adverse employment actions, but all allege that Defendants gave them artificially low performance ratings. Although Plaintiff Clifford is the only Plaintiff jointly employed by Defendant ISP and Defendant Illinois Tollway, all Plaintiffs work at District 15. Further, all Plaintiffs alleged that Defendant Meeder took specified retaliatory actions against them. Plaintiffs also allege a policy and practice of retaliation at District 15, largely led by Defendant Meeder. See *Nelson*, 2008 WL 4211577, at *5 ("[I]f plaintiffs allege a companywide policy of discrimination, then their claims do arise out of the same series of transactions or occurrences."); *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (finding that plaintiffs "asserted a right to relief arising out of the same transactions or occurrences" when each plaintiff "alleged that he had been injured by the same general policy of discrimination"); *cf. Bailey*, 196 F.R.D. at 516 (finding plaintiffs' claims should be severed in part "because their claims do not allege any general discriminatory or illegal standard, policy or procedure").

At this stage in the case—and in light of the federal policy preference for joinder—the Court declines to sever Plaintiff Clifford's claims at this time. That said, this motion is denied without prejudice, and, as facts develop, Plaintiffs may again move to sever Plaintiff Clifford's claims.

**B. Motions to Dismiss**

**1. Section 1983 Claims Defendant Illinois Tollway**

Plaintiffs' complaint alleges that the individual Defendants have final policymaking authority and that the institutional Defendants have a "policy, custom, or pattern of official conduct

7

of engaging in and condoning retaliation." [1, at ¶¶ 28, 32, 36, 72]. Despite these allegations, Plaintiffs clarified in their response brief that they are not pursuing a *Monell* claim. [49-1, at 7]. However, because there is no *respondent superior* liability in § 1983 cases, see, *e.g.*, *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019), without *Monell* liability, Plaintiffs cannot maintain a § 1983 claim against Defendant Illinois Tollway.[3] Accordingly, the Court dismisses the § 1983 claims against Defendant Illinois Tollway.

### 2. Official Capacity § 1983 Claims

Defendants argue that the § 1983 claims against the individual Defendants in their official capacity and against Defendants ISP and the State of Illinois are barred by the Eleventh Amendment for both damages and injunctive relief. The Court agrees. "The Eleventh Amendment bars private litigants' suits against nonconsenting states in federal courts, with the exception of causes of action where Congress has abrogated the states' traditional immunity through its powers under the Fourteenth Amendment." *Joseph v. Bd. of Regents of Univ. of Wisconsin Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). The same is true for state agencies, like Defendant ISP, see, *e.g.*, *Tucker v. Williams*, 682 F.3d 654, 658–59 (7th Cir. 2012), and for state officials in their official capacity, *Joseph*, 432 F.3d at 748.

Plaintiffs do not address this argument as it applies to their damages claim, but argue that the ISP, State of Illinois, and individual Defendants in their official capacity are proper defendants because they also seek an injunction. [49-1, at 5–6]. Defendants reply that the Eleventh Amendment bars lawsuits for prospective relief against a state, its agencies, and its officers if there are no allegations of an ongoing violation of federal law. [55, at 3]. Indeed, in "determining

---

[3] In explaining that they are not bringing a *Monell* claim, Plaintiffs state "the complaint alleges specifically that Plaintiffs seek indemnification from Illinois," but do not provide further explanation. [49-1, at 8]. This brief statement does not sufficiently explain why Defendant Illinois Tollway should remain a Defendant for Plaintiffs' § 1983 claims in the absence of *Monell* liability.

whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alteration in original) (internal citation and quotation marks omitted); see also *Perkinson v. Illinois State Police*, 2016 WL 1321197, at *4 (S.D. Ill. Apr. 5, 2016) (dismissing claim for injunctive relief against defendants in their official capacities because the complaint did not "allege a course of conduct by the defendants that amounts to an ongoing violation of federal law" and instead described acts that were "discrete and the last act described occurred more than a year ago"). Although Plaintiffs seek prospective relief, they have not alleged an ongoing violation of federal law. Instead, their claims rest upon discrete retaliatory actions taken by Defendants. Because the official-capacity individual Defendants, ISP, and State of Illinois are not proper defendants regarding Plaintiffs' § 1983 claims for compensatory and injunctive relief, these claims are dismissed with respect to these Defendants.[4]

### 3. Plaintiff Dickson's First Amendment Claim

Defendants argue that Plaintiff Dickson failed to state a First Amendment retaliation claim because he did not allege facts sufficient to show that he engaged in protected activity. "For a public employee's speech to be protected under the First Amendment, the employee must show

---

[4] The Court recognizes that, in *Power v. Summers*, 226 F.3d 815 (7th Cir. 2000), the Seventh Circuit explained that it is generally permissible for plaintiffs to seek an injunction forbidding retaliation. *Id.* at 819. However, the Court did not discuss the requirement to allege an ongoing violation, and it decided the case two years before the Supreme Court articulated the standard in *Verizon Maryland, Inc.* Moreover, the plaintiffs in *Powers* did not seek a general injunction against retaliation and instead sought an injunction against an ongoing violation that resulted in their base salary being lower than "what it would have been had they not been discriminated against." *Id*. at 820 (stating that a "permissible characterization of what the plaintiffs [were] seeking" was "an injunction that orders a state employee who has been demoted because of his exercise of a federally protected right to be restored to his previous position"). Thus, *Power* is not instructive here, where Plaintiffs do seek a general injunction against retaliation and have not alleged an ongoing violation.

that (1) he made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) his interest in expressing that speech was not outweighed by the state's interests as an employer in promoting effective and efficient public service." *Kristofek v. Vill. of Orland Hills*, 832 F.3d 785, 792 (7th Cir. 2016) (quoting *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013)). "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (internal citations and quotation marks omitted). When determining whether speech involves a matter of public concern, "courts examine the 'content, form, and context' of the statements at issue. While none of the three factors is dispositive, content is the most important." *Kristofek*, 832 F.3d at 794 (internal citations omitted) (quoting *Craig v. Rich Twp. High Sch. Dist. 277*, 736 F.3d 1110, 1115–16 (7th Cir. 2013)). Related to the content of the speech, it "need not address a topic of great societal importance, or even pique the interest of a large segment of the public, in order to be safeguarded by the First Amendment." *Craig*, 736 F.3d at 1116; see also *Dishnow v. Sch. Dist. of Rib Lake*, 77 F.3d 194, 197 (7th Cir. 1996) (explaining that matters of public concern are "matters in which the public might be interested, as distinct from wholly personal grievances"). And related to the form and context of the speech, "a plaintiff's speech could be characterized as a matter of public concern even if the speaker stands to gain a personal benefit in addition to bringing the wrongdoing to light." *Marshall v. Porter Cnty. Plan Comm'n*, 32 F.3d 1215, 1219 (7th Cir. 1994); see also *Belk v. Town of Minocqua*, 858 F.2d 1258, 1264 (7th Cir. 1988) (finding that employee's threatened grievance touched upon matters of public concern even though her "allegations [were] bound up in a personal dispute with her employer").

Here, Plaintiffs allege that Plaintiff Dickson "stat[ed] his intent to litigate Meeder's use of the alleged but illegitimate 'unwritten rule' to block promotions of Dickson and other troopers who were arbitrarily subjected to Meeder's alleged 'unwritten rule.'" [1, at ¶ 90]. Prior to doing so, Plaintiff Dickson "communicated with other troopers who Meeder told the alleged 'five-year unwritten rule' blocked their consideration for promotion." [*Id.*, at ¶ 87]. Further, the complaint alleges that no such unwritten-rule exists, and instead Defendants use it "to select candidates for promotion" in a manner that "violates ISP policy and state law." [*Id.*, at ¶ 88].

Defendants' motion to dismiss raises only one argument on this point: Plaintiff Dickson's speech is not protected because "[a] threat to file a lawsuit is not a protected First Amendment activity." [35, at 8]. Defendants rely on *Cobian v. McLaughlin*, 717 F. App'x 605 (7th Cir. 2017), where a prisoner told a guard that if the guard did not "take protective measures," the prisoner would "be obligated to get a court ordered injunction ordering him to take the necessary measures." *Id.* at 612. The Seventh Circuit found this speech was not protected. *Id.* at 612–13. But *Cobain* does not lay down a sweeping rule that threats to file a lawsuit are never protected First Amendment speech—far from it. Instead, *Cobain* stresses prison-specific concerns, explaining that punishing the prisoner's attempt to coerce the guard was "reasonably related to a legitimate penological interest in promoting order and obedience" and that the prisoner's speech was "insubordinate." *Id.* at 612. These concerns are not at issue here, so Defendants' argument fails.

Defendants raise additional arguments in their reply brief. But by waiting to raise these arguments, Defendants forfeited them. See *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) (explaining that a "district court is entitled to find that an argument raised for the first time in a reply brief is forfeited"). Moreover, even if the Defendants had properly raised these arguments, they would fail. Relying on *Kubiak v. City of Chicago*, 810 F.3d 476 (7th Cir. 2016), Defendants

11

contend that "Plaintiff concedes that [the] form and context of Plaintiff's speech is a verbal statement to his superiors" and that "reports to supervisors that are up the chain of command suggest that the speech does not address a matter of public concern." [55, at 7]. To Defendants' point, the *Kubiak* court determined that "the form of [the plaintiff's] speech also indicates that the objective of her speech was to air a personal grievance" because her complaints "were directed up the chain of command." *Id.* at 483. However, the court had also determined that the content of her speech involved only a private matter, *id.*, suggesting that the form of her speech would not be dispositive on its own, see also *Kristofek*, 832 F.3d at 794 (explaining that "content is the most important" factor). Moreover, in *Kristofek*, the plaintiff privately expressed concerns about a potentially illegal arrest to fellow officers and stated that "he was considering contacting outside law enforcement." *Id.* Although this was a private conversation, the fact that the plaintiff indicated that he was considering reporting the matter "created a 'communicative element' putting the listener[s] on notice that a matter of public concern [was] being raised." *Id.* at 795 (alternations in original) (quoting *Miller v. Jones*, 444 F.3d 929, 936 (7th Cir. 2006)). Here, Plaintiff Dickson stated his intent to file a lawsuit, conveying a similar communicative element.

Next, Defendants' briefing suggests that Plaintiff Dickson did not engage in protected speech because he was motivated by his personal desire to get a promotion. [55, at 7]. However, before engaging in the speech, Plaintiff Dickson learned that other troopers were similarly being blocked from a promotion by a rule that allegedly violates ISP policy and Illinois law, and his speech included a concern about the "other troopers who were arbitrarily subjected to Meeder's alleged 'unwritten rule.'" [1, at ¶¶ 87–90]. Thus, Plaintiff Dickson's speech was not a "wholly personal grievance," *Dishnow*, 77 F.3d at 197, and can "be characterized as a matter of public concern even if [he] stands to gain a personal benefit," *Marshall*, 32 F.3d at 1219. To be sure, the

12

complaint could have alleged more facts regarding Plaintiff Dickson's protected speech. However—particularly given the Defendants' briefing—the Court declines to grant Defendant's motion to dismiss on this point. See *Auto Driveaway Franchise Sys., LLC*, 928 F.3d at 675 ("A complaint need only provide notice of a plausible claim; there is no rule requiring parties to plead legal theories or elements of a case.").

### 4. Plaintiffs' Fourteenth Amendment Claims

Defendants move to dismiss Plaintiffs' Fourteenth Amendment claims [35, at 9–11; 39, at 3–4], in which Plaintiffs allege that Defendants' actions violated Plaintiffs' substantive due process rights, [1, at ¶¶ 163–177]. The Supreme Court "has limited the reach of the substantive component of the due-process guarantee to cases involving abuse of governmental power so arbitrary and oppressive that it shocks the conscience." *Catinella v. Cnty. of Cook*, 881 F.3d 514, 519 (7th Cir. 2018); see also *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019) ("Substantive due process protects against only the most egregious and outrageous government action."). The Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Even claims involving "abhorrent" conduct can fall short of this standard. *Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012) (collecting cases). Defendants argue that the alleged actions do not reach this level. The Court agrees. For example, in *Ryan v. Illinois Department of Child & Family Services*, 185 F.3d 751 (7th Cir. 1999), the plaintiffs alleged their state employer terminated their employment because they spoke out against the agency. *Id.* at 756. The Seventh Circuit quickly dispatched this claim, stating that "[e]ven if the plaintiffs had a protected property interest in their jobs for purposes of due process, they can show nothing that would satisfy the demanding constitutional standards for a violation of

13

substantive due process rights. We therefore proceed immediately to their procedural due process arguments." *Ryan v. Ill. Dep't of Child. & Fam. Servs.*, 185 F.3d 751, 760–61 (7th Cir. 1999) (internal citations omitted).

Plaintiffs' substantive due process claims fail for another reason: "When 'a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Wilks v. Rose*, 715 F. App'x 545, 548 (7th Cir. 2018) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)) (upholding dismissal of plaintiff's substantive due process claims because "that argument amounts to little more than a futile repackaging of [his] First Amendment claim"); see also *Koutnik v. Brown*, 456 F.3d 777, 781 n.2 (7th Cir. 2006) (explaining that the district court "employed the correct approach" in dismissing the plaintiff's substantive due process claim because the claims fell under the First Amendment). Because Plaintiff's retaliation claims are based on their First Amendment rights, it is improper to advance them under the Fourteenth Amendment's Substantive Due Process Clause. See *Redd v. Dougherty*, 578 F. Supp. 2d 1042, 1051 (N.D. Ill. 2008), aff'd sub nom. *Redd v. Nolan*, 663 F.3d 287 (7th Cir. 2011) (dismissing the plaintiff's substantive due process claim based on retaliation because it "falls under the First Amendment").

### 5. State Law Ethics Act Claims

Plaintiffs also bring claims under the State Officials and Employees Ethics Act ("Ethics Act"), 5 Ill. Comp. Stat. 430. The individual Defendants in their official capacities and Defendant ISP argue that the Eleventh Amendment bars these claims. [35, at 9]. Plaintiffs counter that the Eleventh Amendment does not bar their claim for injunctive relief. [49-1, at 13]. However, as Defendants note, in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), the

Supreme Court explained that "[a] federal court's grant of relief against state officials on the basis of state law" "conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Id.* at 106. This is true regardless of they type of relief sought. *Id.* at 104–106; see also *Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 345 (7th Cir. 2020) ("Given the Eleventh Amendment and principles of sovereign immunity, however, a federal court cannot issue relief against a state under state law."). Moreover, even though Illinois may have consented to Ethics Act suits in its own courts, 5 Ill. Comp. Stat. 430/15-25, it did not consent to suit in federal court. And "a state can waive its sovereign immunity to suit in its own courts without thereby being deemed to have waived its Eleventh Amendment immunity to suit in federal court." *Osteen v. Henley*, 13 F.3d 221, 224 (7th Cir. 1993). Accordingly, Plaintiffs' Ethics Act claims against Defendant ISP and the individual defendants in their official capacities are dismissed.[5]

### IV. Conclusion

For the reasons above, the Court denies without prejudice the motion to sever [36], grants the motion to join [40], denies as moot the motion to stay [37], grants the motion for an extension for Defendants to answer [38], and grants in part and denies in part Defendants' motions to dismiss [34; 39]. Specifically, the Court dismisses without prejudice (1) Plaintiffs' First Amendment § 1983 claims against Defendant ISP, the individual defendants in their official capacities, Defendant Illinois Tollway, and the State of Illinois; (2) Plaintiffs' Fourteenth Amendment claims against all Defendants; and (3) Plaintiffs' Illinois Ethics Act complaint against Defendant ISP, the individual Defendants in their official capacities, and the State of Illinois. Plaintiffs' remaining

---

[5] In its motion to dismiss, Defendant Illinois Tollway suggested that "[t]o the extent that the only remaining claim brought by the ISP plaintiffs" is the Ethics Act claim, "this court should decline supplemental jurisdiction." [39, at 3 n.2]. Because the Court declined to sever Plaintiff Clifford's claims, her FMLA claim against Defendant Illinois Tollway remains, and the court retains jurisdiction over the Ethics Act claim against it.

claims are (1) their First Amendment § 1983 claims against the individual Defendants in their individual capacities, (2) their Illinois Ethics Act claims against the individual Defendants in their individual capacities and Defendant Illinois Tollway, and (3) Plaintiff Clifford's FMLA claim. Plaintiffs are given until April 26, 2021 to file an amended complaint if they wish to do so. If Plaintiffs wish to stand on the claims that remain from their original complaint, they should so advise Defendants and the Courtroom Deputy. Defendants' responsive pleading will be due 28 days after Plaintiffs either (a) file an amended complaint or (b) give notice of their election to stand on the current complaint. A joint status report that includes a proposed discovery plan is due within 7 days of the filing of Defendants' responsive pleading.

Dated: March 29, 2021

_____
Robert M. Dow, Jr.
United States District Judge