IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DOUGLAS J. BALDER, et al., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-7928 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| ROBERT MEEDER, et al., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Illinois State Police employees Douglas Balder, David Dickson, Athena Clifford, and Brandon Engleking ("Plaintiffs") bring this action against Robert Meeder, Dominic Chiappini, and Troy Booher in their individual capacities; the Illinois Tollway; and the State of Illinois ("Defendants"). Before the Court is Defendants' motion to dismiss Count 4 of Plaintiffs' complaint. [73.] For the reasons below, Defendants' motion [73] is denied. Consistent with the Court's May 2, 2022 minute order [92], counsel are directed to file a joint status report no later than July 13, 2022. The Court will set further case management deadlines following review of the joint status report.

**I.     Background**[1]

Plaintiff Athena Clifford is a civilian employee who works for both the Illinois Tollway and Illinois State Police ("ISP") in District 15.[2] [68 at ¶ 5.] According to the complaint, District 15 is the most prestigious of the 22 state police districts; it is high-profile, has dual reporting

---

[1] For purposes of Defendants' motion to dismiss, the Court accepts as true all well-pled allegations set forth in the amended consolidated complaint [68] and draws all reasonable inference in Plaintiff's favor. *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

[2] The Court recites only factual allegations relevant to Athena Clifford for the purpose of ruling on this motion.

responsibilities to the ISP and the Illinois Tollway, and it receives a significant share of the state police budget. [*Id.* at ¶ 2.]

Because of District 15's prestige, command-staff leadership positions in District 15 are among the most highly sought after and powerful leadership positions available within the Illinois State Police. [68 at ¶ 6.] Defendants Robert Meeder and Dominic Chiappini were the command-staff leaders, ultimate authorities, and final decisionmakers for District 15. [*Id.* at ¶ 7.] From 2015 through February 2019, Meeder served as the District Commander for District 15, and in 2019 he became the Northern Patrol Command Major, which "includes authority over District 15." [*Id.* at ¶ 29.] During the relevant time period, Meeder had "final policymaking authority and/or was delegated with final policymaking authority with regard to his acts and conduct alleged herein." [*Id.* at ¶ 30.] From 2018 through February 2019, Chiappini served as the Executive Officer for District 15 and was second in command to Meeder and reported to him directly. [*Id.* at ¶¶ 33–34.] In 2019, Chiappini became Captain and District Commander for District 15. [*Id.*] Chiappini also had "final policymaking authority and/or was delegated with final policymaking authority." [*Id.* at ¶ 35.] Meeder and Chiappini were Plaintiff's supervisors. [*Id.* at ¶ 8.]

The ISP has statewide authority to conduct law enforcement activities and criminal investigations. [68 at ¶ 42.] ISP Troopers enforce traffic laws on state highways and interstate expressways, oversee the security of the state capitol complex, protect the governor, train new officers, support local police and help to coordinate multi-jurisdictional task force activity in serious or complicated cases. [*Id.* at ¶ 43.] ISP Troopers are supported by civilian employees and personnel—like Clifford—who handle other aspects of ISP's law enforcement activities. [*Id.* at ¶ 44.]

Clifford joined the Illinois Tollway in 1999 and has worked for District 15 since 2003. [68

at ¶ 53.] Plaintiffs claim that Defendants "retaliated against Plaintiffs, and others, who they perceive challenge or threaten their leadership position and authority." [*Id.* at ¶ 9.] Clifford states that she reported and opposed discrimination and harassment in the workplace, [*id.* at ¶ 13], and that her conduct in this respect "was opposed by Robert Meeder and Dominic Chiappini," [*id.* at ¶ 14], and drove them to take retaliatory actions. [*Id.* at ¶ 15.] Specifically, Clifford claims that Defendants retaliated "by taking away her ability to work overtime, telling co-workers she is a 'theif' and 'shouldn't be trusted' because she engaged in protected activity, falsely accusing her of faking an injury and lying to make people 'feel bad' for her, disciplining her and giving her arbitrary and artificially low performance ratings." [*Id.* at ¶ 18.] Defendants also "clos[ed] her reports and complaints of harassment without investigation." [*Id.* at ¶ 19.]

Clifford asserts that she was informed of the hierarchy within District 15 and the ISP, and that she was reminded of the "chain of command" on "several occasions." [68 at ¶¶ 131–33.] For example, Clifford was told "that Meeder is her 'Chief.'" [*Id.* at ¶ 134.] According to the complaint, Clifford was one of the most senior employees within the District 15 office staff [*id.* at ¶ 136], and she maintains that she "met or exceeded the ISP and Illinois Tollway's legitimate employment expectations" throughout all relevant time periods. [*Id.* at ¶ 135.]

In 2018 and 2019, Clifford reported what she believed was unlawful discrimination and harassment occurring in the workplace to the Illinois Tollway EEO office, Illinois Tollway administration, District 15 command, labor relations, and the AFSCME union. [68 at ¶ 141.] Clifford believes that Meeder "made the reports 'disappear'" so that no further action would be taken on them. [*Id.* at ¶ 142.]

In 2018, Meeder hired Defendant Troy Booher to work as the Support Services Manager for District 15, a position that had been left vacant for several years. [68 at ¶¶ 39, 143.] Booher

3

became Clifford's supervisor, and she reported to him in turn. [*Id.* at ¶¶ 144–45.] Clifford believes that Meeder told Booher that Clifford was "a troublemaker, not to be trusted, and a person unworthy of employment." [*Id.* at ¶ 146.] In 2018, Clifford received the worst performance ratings of her career. [*Id.* at ¶147.] Clifford maintains that every year in her career prior to 2018 she consistently received "favorable" employee ratings. [*Id.* at ¶ 137.]

In June 2019, Clifford reached the 20-year milestone in her career. [68 at ¶ 148.] Traditionally, the District Commander recognizes such an accomplishment at District 15's annual "20 Year Party," but Clifford was not recognized in the event. [*Id.*] Clifford claims that Meeder and Chiappini's refusal to recognize her service was yet another act of retaliation against her in response to her reports of discrimination and harassment. [*Id.* at ¶ 149.] Clifford asserts that Meeder and Chiappini took those actions "pursuant to a policy and practice of retaliation the knowledge and acquiescence of Illinois Tollway supervisory officials." [*Id.* at ¶ 152.] Furthermore, Clifford believes that Illinois Tollway supervisory officials were aware of Meeder and Chiappini's unlawful actions against her, but "turned a blind eye" to the conduct instead of taking any remedial action. [*Id.* at ¶¶ 153–54.]

Clifford brings five claims in total (Counts 4, 5, 6, 7, and 9). Defendants have moved to dismiss Count 4, in which she asserts pursuant to 42 U.S.C. § 1983 that Defendants Meeder and Chiappini deprived her of her First Amendment rights.

## II. Legal Standard

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 558 (2007). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable

inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011)). Additionally, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley*, 671 F.3d at 616).

### III. Analysis

Clifford brings Count 4 pursuant to 42 U.S.C. § 1983 and asserts that Defendants Meeder and Chiappini retaliated against her in violation of the First Amendment after she spoke out about the discrimination and harassment she claims to have witnessed. Defendants argue that Clifford's complaints were not constitutionally protected speech, thus her claim fails as a matter of law.

"[T]he threshold question in a public employee's First Amendment retaliation suit is whether the employee's speech was constitutionally protected." *Ulrey v. Reichhart*, 941 F.3d 255, 259 (7th Cir. 2019). "A public employee's speech is constitutionally protected only if it: (1) was made as a private citizen; and (2) addressed a matter of public concern." *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017). An employee who fails to establish either element does not have a First Amendment retaliation claim based on actions her employer has taken in response to her speech. *Id.*

A.     **Private Citizen**

The first question here is whether the complaint plausibly alleges that Clifford spoke as a private citizen. When a citizen works in government service, "the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "Citizens do not surrender their First Amendment rights by accepting public employment, but legal doctrine in this field tries to maintain a careful balance between the interests of the employee as a citizen and the interests of the employer-government in serving the public." *Ulrey*, 941 F.3d at 258. The Supreme Court established the boundaries of the First Amendment's application to public employees in *Garcetti v. Ceballos*, 547 U.S. 410 (2006). The Court demarcated that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline. *Garcetti*, 547 U.S. at 421.

Defendants argue that as a District 15 employee, Clifford had a duty to report incidents of workplace harassment and discrimination, and thus did not speak as a private citizen entitled to First Amendment protection. To determine whether Clifford spoke pursuant to her "official duties," the Court makes a "practical inquiry" into "what duties the employee is expected to perform, and is not limited to the formal job description." *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008).

Clifford claims that in 2018 and 2019, she "opposed and reported what she reasonably believed to be unlawful discrimination and harassment in the workplace." [68 at ¶ 141.] According to the complaint, she "made her reports to, among others, the Illinois Tollway EEO office, Illinois Tollway administration, District 15 command, labor relations, and the AFSCME union." [*Id.*] Based on the facts stated in the complaint, Clifford spoke pursuant to her official duties with

6

respect to the reports she made to the Illinois Tollway EEO Office, Illinois Tollway Administration, and District 15 Command; those complaints are not constitutionally protected speech and cannot form the basis of a First Amendment retaliation claim. With respect to her report to the AFSCME union, however, Clifford has alleged sufficient facts which tend to show that she spoke as a private citizen.

Clifford states that her "significant duties and responsibilities" involved "interacting with Troopers and working on fatal files, schedules, subpoenas, TARC accident reports, DUI packets and squad car crashes." [68 at ¶ 138.] That this description does not include "reporting misconduct" as one of her "significant duties and responsibilities" does not mean, however, that she did not have a duty to report harassment and discrimination. See *Cage v. Harper*, 2021 WL 3022316, at *18 (N.D. Ill. July 16, 2021) ("[R]eporting misconduct does not have to be one of an employee's 'core' job functions to be part of his or her official duties" (citing *Spiegla v. Hull*, 481 F.3d 961 (7th Cir. 2007)). As noted above, the Court cannot put such "dispositive weight on an 'excessively broad job description' without assessing, as a practical matter," the tasks Clifford was expected to perform in her "'daily professional activities.'" *Chrzanowski v. Bianchi*, 725 F.3d 734, 738–40 (quoting *Garcetti*, 547 U.S. at 422).

The manner in which Clifford raised her concerns tips the scale against her—Clifford seems to admit this much by not arguing otherwise in her briefing on this motion [see 81, at 5 ("Clifford's alleged external reports are protected under the First Amendment, even if Clifford's 'internal' reports are not protected as Defendants claim"]. As Defendants correctly point out, the Seventh Circuit has ruled on multiple occasions that a public employee speaks pursuant to her official duties when she reports internal misconduct through only internal channels. See *Roake v. Forest Pres. Dist. Of Cook Cnty.*, 849 F.3d 342, 346 (7th Cir. 2017) (plaintiff's speech was

7

unprotected where plaintiff "shared the complaints only with his employer, and the complaints focused exclusively on official misconduct by his fellow officers"); *Kubiak v. City of Chicago*, 810 F.3d 476, 482 (7th Cir. 2016) (plaintiff's speech was "intimately connected with her professional duties" where she "complained that her co-worker treated her inappropriately at work" and "her speech was directed to her supervisor, the director of her office, and the IAD"); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1091–92 (7th Cir. 2008) ("[C]ourts have determined that reports by government employees to their superiors concerning alleged wrongdoing in their government office were within the scope of their job duties, and, therefore, the employees were not speaking as private citizens."); see also *Kohl v. Davis*, 2021 WL 492874, at *5 (N.D. Ill. Feb. 10, 2021) (where plaintiff "complained to his supervisors, about a coworker, related to the coworker's abuse of her official duties, he was speaking pursuant to his professional responsibilities"); *Carter v. Ill. Gaming Bd.*, 2020 WL 1639914, at *4 (N.D. Ill. Apr. 2, 2020) (plaintiff's "internal complaints about the discriminatory and harassing conduct she allegedly suffered at work **** were made through the appropriate chain of command" and thus "fall outside the First Amendment's scope"). The facts in Plaintiff's complaint establish that she "works for both the Illinois Tollway and Illinois State Police in District 15." [68 at ¶ 5.] The Illinois Tollway EEO Office and Administration, and the District 15 Command are all internal oversight bodies. Clifford's reports to those bodies are thus unprotected by the First Amendment.

Clifford's report to the AFSCME union is a different story. On at least two occasions since *Garcetti*, the Seventh Circuit has found that plaintiffs spoke as private citizens and therefore not pursuant to their official duties when directing speech to a labor union. See *Swetlik v. Crawford*, 738 F.3d 818, 826 (7th Cir. 2013) (plaintiff's "statements were made in his capacity as a union member, not as part of his official duties as a police detective," thus "*Garcetti* does not deprive his

8

comments of First Amendment protection" (citations omitted)); *Nagle v. Vill. Of Calumet Park*, 554 F.3d 1106, 1123 (7th Cir. 2009) ("*Garcetti* did not control where a deputy sheriff made constitutionally protected statements in his capacity as a union representative."). Despite Defendants' arguments to the contrary, Clifford's report to her union resembles the plaintiff's speech in *Logan v. City of Chicago*, 2018 WL 5279304 (N.D. Ill. Oct. 2018). In that case, although the plaintiff's claim ultimately failed because he could not establish that he was speaking on a matter of public concern, the court distinguished between plaintiff's internal report to Human Resources and his external report to the City's Office of the Inspector General. The court found that plaintiff's report to HR was unprotected speech, but with respect to his report to the OIG, he "spoke purely as a citizen, not as an employee within his official capacity." *Logan*, 2018 WL 5279304, at *3.

Defendants try to distinguish *Logan* by arguing that reports to an independent body tasked with rooting out corruption differ from a report to a labor union because the complaint does not establish that "Clifford's reports to the AFSCME [were] anything more than a routine employment related complaint in the workplace pursuant to a governing collective bargaining agreement." [84 at 3.] But the complaint does not establish any of these facts. Perhaps fact discovery will prove Defendants' theory to be true, and that such "routine" complaints are akin to unprotected internal reports. For now, however, the complaint sufficiently alleges that Clifford reported misconduct "outside established channels" such that she was speaking as a private citizen when she complained to the AFSCME. See *Spalding v. City of Chicago*, 186 F. Supp. 3d 884, 904 (N.D. Ill. 2016).

B.  **Public Concern**

Defendants further argue that even if Clifford was speaking as a private citizen when she reported harassment and discrimination to the AFSCME, Count 4 fails nonetheless because she has not plausibly alleged that her speech addressed a matter of public concern. The Court disagrees.

"Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (internal citations and quotation marks omitted). When determining whether speech involves a matter of public concern, "courts examine the 'content, form, and context' of the statements at issue. While none of the three factors is dispositive, content is the most important." *Kristofek v. Vill. of Orland Hills*, 832 F.3d 785, 794 (7th Cir. 2016) (internal citations omitted) (quoting *Craig v. Rich Twp. High Sch. Dist. 277*, 736 F.3d 1110, 1115–16 (7th Cir. 2013)). Furthermore, the content of the speech "need not address a topic of great societal importance, or even pique the interest of a large segment of the public, in order to be safeguarded by the First Amendment." *Craig*, 736 F.3d at 1116.

Defendants argue the allegations in the complaint "suggest only that the content, context, and form of Clifford's speech was unequivocally to further her own private interests." [84 at 6.] But a different inference is at least equally plausible. Nowhere in the complaint does Clifford claim that only she faced discrimination and harassment. In fact, it is not clear from the complaint that the discrimination and harassment that Clifford "opposed and reported" (which she claims led to retaliation against her) were ever directed at her or any particular individual, but that it occurred in the "workplace." [See 68 at ¶ 141.] Fact discovery may reveal that her complaints related to

10

discrimination and harassment that she alone faced. Or perhaps the evidence will show that Clifford complained of widespread and pervasive discrimination and harassment, in which case the public concern would become obvious. See, *e.g.*, *Auriemma v. Rice*, 910 F.2d 1449, 1460 (7th Cir. 1990) ("It must also be a matter of public concern if a group of public employees is allegedly harassed and penalized by supervisors for seeking redress *** because of their public objection to the alleged racial basis of the reorganization."); *cf. Houskins*, 549 F.3d at 491–92 (plaintiff's speech was "tied to a personal employment dispute," and nothing in the record showed that her "purpose in filing the police report was to bring to light any wrongdoing by the Sheriff, *e.g.*, *** to uncover a policy of selective discipline within the CCDOC"). But at this stage in the case, where the Court must draw all reasonable inferences in favor of Clifford, it cannot conclude that her speech "was unequivocally to further her own private interests." [See 84 at 6.]

## IV. Conclusion

For the reasons above, Defendants' motion [73] is denied. Consistent with the Court's May 2, 2022 minute order [92], counsel are directed to file a joint status report no later than July 13, 2022. The Court will set further case management deadlines following review of the joint status report.

Dated: June 29, 2022

Robert M. Dow, Jr.
United States District Judge